DS130794

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF TEXAS

2021 APR 12  AM 10:33

DEPUTY CLERK_____ CX

Joe Hunsinger
  Plaintiff Pro-Se'

Case No:

V.

AFFORDABLE AUTO PROTECTION, LLC.
  Defendant

3-21CV0830-K

SING FOR SERVICES, LLC dba MEPCO
  Defendant

# COMPLAINT

## 1.0  PARTIES

1.1   Joe Hunsinger is a an individual citizen of Texas and a resident of this District.

1.2   Defendant Affordable Auto Protection, LLC. (Affordable) is a Florida corporation with its principal place of business in the State of Florida with a principle address of 1300 N Congress Rd., West Palm Beach Florida 33409.  Palm Beach County.

1.3   Affordable was created by Gus Renny.

1.4   Defendant can be served by their registered agent Gus Renny at 1300 N Congress Rd., West Palm Beach Florida 33409.

1.5   Sing for Services, LLC. dba MEPCO (Mepco) is an Illinois corporation with its principal place of business 205 North Michigan Ave, #2200, Chicago, Illinois 60601.

1..6   Mepco can be served through their registered agent Illinois Corporation Service, 801 Adlai Stevenson Dr., Springfield, Illinois 62703.

## 2.0  JURISDICTION AND VENUE

2.1    This court has personal specific jurisdiction pursuant to 28 USC Section 1331 and 47 USC Section 227.

2.2    Supplemental jurisdiction for Plaintiffs state law claims arise under 28 USC Section 1391(b)(2).

2.3    This Court has personal specific jurisdiction over Defendant because defendant made calls to Plaintiff in this District.

## 3.0  PRELIMINARY STATEMENT

3.1    This is an action for damages brought by an individual consumer for violations of the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive and nuisance telemarketing practices.

3.2    Senator Hollings, the TCPA's sponsor, described these call as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of be; they hound us until we want to rip the telephone out of the wall."

3.3    According to findings by the FCC, the agency congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.

3.4    The national DNC registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  Plaintiff requested a copy of Defendants DNC Policy. xxx

3.5    The TCPA regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

3.6    Telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services.

3.7    Neither the TCPA nor its implementing regulations require an explicit mention of a good, product, or service – where the implication of an improper purpose is "clear from the context."

3.8    In other words, "offers that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.

3.9    If a call is not deemed telemarketing, a Defendant must nevertheless demonstrate that it obtained the Plaintiffs prior express consent.

3.10  The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages.

3.11  "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."

3.12  Plaintiff has been harmed by Defendants' acts because his privacy has been violated.  Plaintiff was subject to annoying and harassing telephone calls (texts) that constitute a nuisance.

3.13  Telemarketers must obey the prohibitions in the TCPA.

3.14 Telemarketing is defined as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or charitable contribution

by use of one or more telephones and which involves more than one interstate telephone call.

3.15  Plaintiff establishes injury in fact, if he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

3.16  Plaintiff has the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.

3.17  Plaintiffs "express consent" is not an element of Plaintiffs prima facie case, but is an affirmative defense for which the Defendant bears the burden of proof.

3.18  One single unsolicited marketing text or call is all it takes for a Plaintiff to have standing and bring suit against a violator of the TCPA.

3.19  The TCPA does not bar all business-related text messaging, but instead, focuses, in part, on cellular calls and text messages that are for the purpose of soliciting new or additional business.

3.20  Defendants actions are a pattern and practice over time.

3.21  Defendants, in its alleged violation, was aware of the conduct and allowed it to continue.

3.22  The impersonal and generic nature of Defendants text message(s), demonstrate that Defendant utilized an ATDS in transmitting the message.

3.23  The text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.

3.24  Plaintiff has alleged facts sufficient to infer text messages were sent using ATDS – use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS.

3.25  Defendant used a "long code" to transmit a text to the Plaintiff.  A long code is a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized.  Defendant can copy and past and send hundreds of characters out with a few clicks.

3.26  Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to an from the mobile phone networks SMS centers which are responsible for relaying those messages to the intended mobile phone.  This allows for the transmission of a large number of SMS messages to and from a long code.

3.27  Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the call/text messages at issue in this case.  The systems utilized by Defendant have the capacity of store telephone numbers  and to dial such number from a list.

3.28  Defendants unsolicited calls/text message(s) caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendants text messages also inconvenienced Plaintiff and caused disruption of his daily life.

3.29  Unwanted "Robocalls" are the number one complaint in America today. Americans received 45 billion robocalls just last year in 2020.

3.30  Plaintiff estimates he has received tens of thousands of unauthorized and unwanted text messages in his lifetime from telemarketers.  Some have been from repeat violators and some have been from single call/text violators.  The Bureau of Labor Statistics tells us there are 134,800 telemarketers in the USA.  If

this information is correct American consumers could quite possibly receive 369.31 calls per day and we have to tell the telemarketers is to place us on their do not call list and we won't hear from them in another 12 months, and then process begins all over again? Plaintiff does not want to have his phone ring or text 369.31 times a day from telemarketers. Plaintiff does not even want one telemarketer to call him. There is a reason they say we as a nation may disagree on many issues, but when it comes to unwanted telemarketing (Robocalls/texts) we all agree that we do not like them.

3.31 The contempt from Senator Hollings was he even wanted to do away with all telemarketers, period. Plaintiffs pleading as mentioned above are clear and give an insight on where Plaintiff set of mind. How he wants to left alone and unbothered by telemarketing calls/texts.

3.32 The do not call provisions of the TCPA cover any plan, program or campaign to sell goods or services through interstate phone calls. This includes calls by telemarketers who solicit consumers, often on behalf of third party sellers.

3.33 The TCPA has a "safe harbor" for inadvertent mistakes. If a telemarketer can show that, as part of its routine business practice, it meets all the requirements of the safe harbor, it will not be subject to civil penalties or sanctions for mistakenly calling a consumer who has asked for no more calls, or for calling a person on the registry of the DNC list.

3.34 Plaintiffs complaint seeks money damages and injunctive relief from Defendants illegal conduct.

3.35 This private cause of action is a straight forward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy.

3.36  The TCPA was enacted to prevent companies like Defendant from invading Plaintiffs' privacy as explained in paragraph 3.27 and 3.28.

3.37  Defendant(s) uses telemarketing to obtain new customers.

3.38  If Defendant(s) want to avoid a TCPA lawsuit, all they have to do is not break the laws of the TCPA.

## 4.0  VICARIOUS LIABILITY

4.1    At all times relevant the the events giving rise to this lawsuit, Defendant acted through its agents and is therefore liable for such actions pursuant of vicarious liability principles.

4.2    Whenever it is stated herein that Defendant engaged in any act or omission, the statement includes the acts or omissions by Defendant, its agents, its employees, its representatives and others with actual or apparent authority to act on behalf of and bind the Defendant.

## 5.0  QUESTIONS OF LAW

5.1    There are well defined and nearly identical questions of law and fact that affect all parties.  Such common questions of law and fact include, but are not limited to, the folllowing:

5.2    Whether Defendant(s) placed such telephone calls to the Plaintiff;

5.3    Whether Defendant(s) TCPA violations and conduct was knowing and/or willful:

5.4 Whether Defendant(s) can meet their burden of showing that they clearly and unmistakably obtained "prior express consent" to make such calls/texts to the Plaintiff;

5.5 Whether Defendant(s) are liable for damages to the Plaintiff, as well as the amount to of such damages;

5.6 Whether Defendant(s) identified themselves to the Plaintiff or if their agents identified the entity on whose behalf the call/text was being made;

5.7 Whether Defendant(s) sent Plaintiff their DNC policy when it was requested;

5.8 Whether Defendant(s) uses telemarketing to obtain new customers;

5.9 Whether Defendant(s) have a written DNC policy;

5.10 Whether Defendant(s) written DNC policy was shared with anyone "on demand.";

5.11 Whether Defendant(s) can prove they trained their employees about the telemarketing rules and laws set in place;

5.12 Whether Defendant(s) have maintained a list of persons that they may not contact;

5.13  Whether Defendant(s) have a process in place to prevent phone calls to either numbers on the National Do Not Call List or numbers on the telemarketers internal do not call list;

5.14  Whether Defendant(s) have a process in place to monitor calls to prevent violations of the do not call list;

5.15  Whether Defendant(s) have maintained an errant list of all call that violate the do not call regulations;

5.16  Whether Defendant(s) can prove they used TCPA compliant vendors;

5.17  Whether Plaintiff opted out of receiving calls/texts from Defendant.

5.18  Whether Defendant(s) honored Plaintiffs opt out/stop request.

5.19  Whether Defendant(s) had reason to know, or should have known that its conduct would violate the statute.

5.20  Whether Plaintiff is entitled to injunctive relief;

5.21  Whether Defendant(s) should be enjoined from engaging in such mentioned conduct in the future;

5.22  Common questions in this case have common answers.

## 6.0  FACTUAL ALLEGATIONS
## AGAINST RESORT VACATIONS, INC.

6.1    On Thursday March 23, 2021 at 12:36 PM Plaintiff received a phone call from 903-345-7946 to his cellular phone number ending in 8146.  Plaintiff said hello, hearing a beeping sound, after a couple of seconds someone came on the line.  It was a telemarketer claiming selling automobile warranty insurance.    The telemarketers voice sounded far off, like it was coming from a far away place and then the call was transferred and the voice reception was a lot better.  So was the English.

6.2    Plaintiff, wanting to investigate his claim against the telemarketer, followed the telemarketers cues about the warranty packages he was marketing and answered his questions.

6.3    Plaintiff, wanting to ascertain the true identity of the telemarketer, provided his credit card number to Defendant Affordable.  Immediately after providing his credit card number to Defendant Affordable he was charged $195 to his American Express.

6.4    Plaintiff gave his email and mailing address address to Defendant Affordable and was told he would be receiving an email shortly and an insurance policy in the mail.

6.5    As of today April 12, 2021 Plaintiff has not received an email or anything in the mail from Defendant Affordable.

6.6    About a week later Plaintiff received paperwork about his Affordable Auto Protection automobile warranty insurance from Mepco.

6.7    Upon Plaintiffs information and believe, Mepco is an auto warranty service provider who relies on Affordable to solicit and generate prospective customers and enter into contracts on their behalf with those prospective customers.

6.8    Mepco's letter tells Plaintiff he has authorized them to automatically debit his credit card to make payments on the "contract".

6.9    Plaintiff never authorized Affordable or Mepco to automatically debit his credit card.

6.10   Gus Renny the founder of Affordable has been sued several times over the years for violating the TCPA under other LLC's.   And now Mepco associates with Gus Renny and relies on his to bring them business from telemarketing campaigns with his new LLC. despite his previous civil history.

6.11   Mepco and Gus Renny have been sued in the past for the same TCPA violations they schemed up together.

6.12   Come on' man.

6.13   Plaintiff is informed and believes and therefore alleges that calls that Defendant placed to him were made using an automatic telephone dialing system.   Plaintiff's belief is substantiated by the fact that the call began with a pause, of several seconds of Plaintiff saying "hello" several times, did a representative come on line with the Plaintiff.

6.13   Plaintiff searched Defendant on Pacer [and also paid their fees to search and look at pleadings] found numerous legal filings against the Gus Renny from his other LLC's and Mepco and their subsidiaries or affiliates for previous TCPA violations.

6.14   Plaintiff called the Defendant telemarketer Affordable at 903-345-7946 and it is a non working number.

6.15  Affordable never identified themselves to the Plaintiff over the telephone at the time of the call in question in this Complaint.

6.16  The acts and or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently about absent bona fied error, lawful right, legal defense, legal justification, or legal excuse.

6.17  Part of Plaintiffs discovery will will be finding out if Defendant has a company wide pattern or practice of engaging in the alleged illegal practices at issue in my case.  Plaintiff is proffering that a number of similar incidents have occurred around the country to other everyday people even though Defendant has been sued for violating the TCPA in the past.

6.19  The call placed by the Defendant was not necessitated by an emergency.

6.20  Defendants calls were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

6.21  Defendant and/or their agents failed to properly identify themselves as required by the TCPA.

6.22  Plaintiff is not a customer of Defendant and has not provided defendant with his personal information or telephone number, or sought out solicitation from the Defendant or their agents.

6.23  It is Defendants burden to prove they has "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system."

6.24  At no time did Plaintiff provide prior express written consent, or even prior permission, for the Defendant or their agents to call the Plaintiff.

6.25 Plaintiff does not have and has never had an established business relationship with the Defendant.

6.26 The call received by the Plaintiff from the Defendant or their agent was for the purpose of encouraging the purchase of rental of, or investment in, property, goods, or services. The call therefor qualifies as telemarketing.

6.27 Plaintiff is the subscriber of phone number ending in 8146 and is financially responsible for phone service to said number.

6.28 Plaintiff's phone number ending in 8146 is primarily used for personal, family, and household use.

6.29 Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

6.30 Upon information and belief, Defendants calls harmed Plaintiff by intruding upon Plaintiffs seclusion when he was on the phone call with the junkyard, lost time attending to unwanted and unauthorized calls, decreased phone battery life, need for more frequent re-charging of the battery, annoyance, and frustration.

6.31 As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA. This is for each and every violation, whether Defendant committee multiple violations with a single phone call.

6.32 The calls telemarketing calls for auto warranty have now stopped. Defendants have called Plaintiff multiple times in their telemarketing campaign.

# 7.0 STANDING

7.01  Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.

7.02  Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.

7.03  For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. In Plaintiffs case, Defendant transmitted a call to Plaintiff's cellular telephone, using an ATDS. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

7.04  For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." In Plaintiffs case, Defendant invaded Plaintiffs privacy and peace by calling his cellular telephone, and did this with the use of an ATDS.  Furthermore, Plaintiff was distracted and annoyed by having to take time answering the phone call from Defendants agent and jump through hoops to get their identity.  All of these injuries are particularized and specific to Plaintiff.

7.05  Plaintiffs case passes The " Traceable to the Conduct of Defendant" Prong.

7.06  The second prong to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant. The above call was directly and explicitly linked to Defendant.  The number from which the call was sent belongs to Defendant. This call  is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

7.07  Plaintiffs case passes the " Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong,

7.08 The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion In the present case, Plaintiff's Conclusion include a request for damages for each call transmitted by Defendant, as authorized by statute in  47 USC. Section 227. The statutory damages were set by Congress and specifically  redress the financial damages suffered by Plaintiff.

7.09  Plaintiff, under his 14 Amendment rights, has right to bring this action to be heard in front of a jury.

7.10  Because all standing requirements of Article III of the US Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## COUNT 1

8.01  Plaintiff re-alleges and incorporates the above paragraphs.

8.02 Defendant violated 47 USC Section 227(b)(1)(A)(iii) by placing (non emergency) solicitation call to the Plaintiff.

8.03  Defendants each must pay Plaintiff $500 for each call placed to Plaintiff.

## COUNT 2

9.01  Plaintiff re-alleges and incorporates the above paragraphs.

9.02 Defendants transmitted **one** solicitation call to Plaintiffs cellular phone number, which was registered on the Do Not Call registry, violating 47 CFR Section 64.1200(c).

9.03  Defendants each must pay Plaintiff $500 for each call placed to Plaintiff.

## COUNT 3

10.01 Plaintiff re-alleges and incorporates the above paragraphs.

10.02 Defendants knew or should have know that Plaintiff had not given <u>express consent</u> to receive its calls violating USC Section 227(b)(3)(C).

10.03 Each Defendant must pay Plaintiff $500.

## COUNT 4

11.01 Plaintiff re-alleges and incorporates the above paragraphs.

11.02 Defendant transmitted a call to the Plaintiff, despite the fact that Plaintiffs phone number <u>is listed on the DNC list</u>, a violation of USC Section 227(c).

11.03 Each Defendant must pay Plaintiff $500.

## COUNT 5

12.01 Plaintiff re-alleges and incorporates the above paragraphs.

12.02 Defendant transmitted <u>more than one call</u> to the Plaintiff, a violation of USC Section 227(c)(5)(B).

12.03 Defendant must pay Plaintiff $500 for each call placed to the Plaintiff.

## COUNT 6

13.01 Plaintiff re-alleges and incorporates the above paragraphs.

13.02 Defendant <u>spoofed their caller id.</u>  The phone numbers on displayed on Plaintiffs caller id were long codes.  Plaintiff cannot call Defendants long code and speak to someone.  A violation of 47 CFR Section 64.1601(4)(e).

13.03 Defendant failed to provide a <u>call back number</u> in the initial call transmitted to Plaintiff.  A violation of 47 CFR Section 64.1200(b)(2).

13.04 Defendant must pay Plaintiff $500.

## COUNT 7

14.01 Plaintiff re-alleges and incorporates the above paragraphs.

14.02 Defendant made calls to Plaintiffs phone ending in 7677 intentionally or knowingly and the calls were not accidental.

14.03 Pursuant to TBCC Section 305.053, Plaintiff sues here for monetary damages.

140.4 Pursuant USC Section 227(c)(5) and 47 CFR Section 64.1200(a)(2), treble the $500 statutory damages to be recoverable by Plaintiff against the Defendant to $1500 for each transmitted call Defendant placed and for violating the the DNC request.

14.05 Defendant must pay Plaintiff $1500 for each violation and call transmitted to Plaintiff.

## COUNT 8

15.01 Plaintiff re-alleges and incorporates the above paragraphs.

15.02 Pursuant to 47 USC Section 227(b)(3)(A) and TBCC Section 305.053, the court following the trial of this action should issue an order permanently enjoining Defendant and its agents from engaging in any further conduct with respect to Plaintiff which violates the rules and regulations of 47 USC Section 227.

## COUNT 9

16.01 Plaintiff re-alleges and incorporates the above paragraphs.

16.02 Defendant intentionally intruded on Plaintiffs solitude, seclusion, and private affairs by transmitting unwanted telemarketing calls to his cellular phone. Defendants intrusion would be highly offensive to a reasonable person.

16.03 The repeated autodialed calls to Plaintiffs cellular phone have caused him emotional harm and distress, frustration, aggravation, wasted time, a nuisance and other losses.

16.04 Plaintiff seeks to recover actual damages, including his damages for mental anguish, to be proven at trial.  Mental anguish is one of the torts for which Plaintiff can recover mental-anguish damages without proving physical injury.

## TRIAL BY JURY

17.01 Plaintiff demands a trial by jury under the 7th Amendment of the US Constitution.

## CONCLUSION

Plaintiff has read Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n which pretty much establishes the conduct for attorneys and references abusive litigation tactics from attorneys conduct.  Plaintiff believes if Defendant would read Dondi and instruct their attorney to send copies of the filings and emails between the Plaintiff and Defendants attorney, this would inform the Defendant on what the real world is like with respect to attorneys and their legal actions and it might keep Defendants attorney from "poking a stick at Plaintiffs ribs" just to upset him and try to prolong the hours he will be charging his client.

If Affordable or Mepco deduct any money from Plaintiffs credit card they will be in violation of 15 USC 1693e, which Plaintiff amend his Complaint and will also

include more civil action under 1693m for these violations.  Do not charge my credit card again.  Do not sell or give out the information you have about me.  Whatever information you have on my keep lock it up and throw away the key or face more civil litigation.

Plaintiff requests everything he has asked for in his Complaint and other relief as the Court deems necessary.

Joe Hunsinger – Pro se
7216 CF Hawn Frwy.
Dallas, Texas 75217
214-682-7677
joe75217@gmail.com

 Gmail

**Joe Hunsinger <casa75217@gmail.com>**

## National Do Not Call Registry - Your Registration Is Confirmed

**Verify@donotcall.gov** <Verify@donotcall.gov>                                    Mon, Apr 12, 2021 at 8:06 AM
To: casa75217@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 8146 on September 11, 2014. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

**************************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

# 2021 FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L20000232535

**FILED**
**Apr 06, 2021**
**Secretary of State**
**8484825141CC**

**Entity Name:** AFFORDABLE AUTO PROTECTION, LLC

**Current Principal Place of Business:**

1300 OLD CONGRESS RD
WEST PALM BEACH, FL 33409

**Current Mailing Address:**

1300 OLD CONGRESS RD
WEST PALM BEACH, FL 33409 US

**FEI Number:** 86-2888397

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

RENNY, GUS
1300 OLD CONGRESS RD
WEST PALM BEACH, FL 33409 US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

Electronic Signature of Registered Agent                                                               Date

**Authorized Person(s) Detail :**

| | |
|---|---|
| Title | MGR |
| Name | RENNY, GUS |
| Address | 1300 OLD CONGRESS RD |
| City-State-Zip: | WEST PALM BEACH FL 33409 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: GUSTAV RENNY                                          MGR                              04/06/2021

Electronic Signature of Signing Authorized Person(s) Detail                                          Date

 **MEPCO**

Providing Billing Services for Your Automotive Protection Plan
10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603

# CONFIRMATION OF PREAUTHORIZED ACH/CC

**THIS IS NOT A BILL**

| **BILLING ACCOUNT NUMBER** | **20210369335975** |
|---|---|

### ACCOUNT AND CONTRACT INFORMATION

| | |
|---|---|
| Contact Mepco at: | (800)397-6767 |
| Billing Account Number: | 20210369335975 |
| Access your account online at: | WWW.MEPCO.COM |
| User Name: | 20210369335975 |

| **AAP** | **(888)678-0697** |
|---|---|
| Contract Number: | DAE1010388 |

| **DIMENSION-PELICAN** | **(800)457-7703** |
|---|---|
| Contract Number: | DAE1010388 |

2673  1 MB 0.450        12        Return Service Requested

Joseph D Hunsinger
7216 C F Hawn Fwy
Dallas, TX 75217-4849

Mepco is not responsible for the marketing, sale, design, administration of claims, or payment of claims under this vehicle service contract.

Dear Valued Customer,

**IMPORTANT NOTICE:**
This letter is to confirm that you have arranged to make recurring payments to Mepco under your vehicle service contract. Pursuant to your Authorization Agreement for Recurring Direct Payments, Mepco will charge/debit your designated credit card or debit card/bank account in the amount of the monthly payments and fees you owe under your vehicle service contact and on or after the date indicated in your debit authorization, in each case subject to additional terms and conditions of your Authorization Agreement for Recurring Direct Payments.

Payment Method Used:   Credit Card
Truncated Account Number:   1002

**WHAT THIS MEANS:**
Each month your payment will be processed automatically by Mepco using the above account information.

**HOW TO UPDATE AUTOMATIC RECURRING PAYMENTS:**
Your recurring debit authorization will remain in effect until revoked by you in accordance with the terms below:

You may update your automatic recurring payment at any time by submitting an email to request to update recurring payments on our website at www.mepco.com, by mailing a written statement expressly revoking this authorization to Mepco, 10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603, or by calling Mepco's Customer Service department at (800) 397-6767.

*** Please note, Mepco will require a reasonable time, but in no event less than 10 calendar days following the receipt of this authorization or any change to or revocation of this authorization, to act on the authorization, change or revocation.

**If you have not requested this change to automatic recurring payments, please contact our office immediately.**

If you have any questions regarding this notice please contact our Customer Service department at (800) 397-6767 Monday through Friday from 8:00 am to 5:00 pm CST.

Sincerely,

Mepco

# MEPCO

Providing Billing Services for Your Automotive Protection Plan
10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603

# WELCOME LETTER

| ACCOUNT INFORMATION | 20210369335975 |
|---|---|
| Billing Account Number: | 20210369335975 |
| Seller Contract Number: | DAE1010388 |

002673   2873 1 MB 0.450   12   Return Service Requested

Joseph D Hunsinger
7216 C F Hawn Fwy
Dallas, TX 75217-4849

Dear Valued Customer,

## Congratulations on your purchase of a vehicle service contract from  AAP

We appreciate your business! Mepco is the company that will process your monthly payments for this contract.
Mepco is not responsible for the marketing, sale, design, administration of claims, or payment of claims under this
vehicle service contract.

Please carefully review the information on the next page and confirm your monthly payment method and the terms
of your vehicle service contract. If you have any questions or if the terms are different than you agreed to, please call
our office immediately.

You may access your account online at www.mepco.com to make payments and review important account
details such as remaining balance, contract details, and more.

| User Name: | 20210369335975 |
|---|---|
| Password*: | HU29J976426 |

*You will be prompted to change your password upon your first time logging in.

Thank you for your business.  We look forward to servicing your account.

Mepco

Rev.  06/2017

| FACTS | WHAT DOES MEPCO DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>■  Social Security number and Credit Card and/or Checking Account Information<br>■  Account Balance       and Account Transaction and Transaction History<br>■  Payment History       and Other Personally Identifiable Information<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Mepco chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Mepco share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—**<br>such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—**<br>to offer our products and services to you | No | We Don't Share |
| **For joint marketing with other financial companies** | No | We Don't Share |
| **For our affiliates' everyday business purposes—**<br>information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—**<br>information about your creditworthiness | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

| Questions? | Call 800-397-6767   or go to www.Mepco.com |
|---|---|

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF TEXAS

Joe Hunsinger
  Plaintiff Pro-Se'                                  Case No:

V.

AFFORDABLE AUTO PROTECTION, LLC.
  Defendant

SING FOR SERVICES, LLC dba MEPCO
  Defendant

# COMPLAINT

## 1.0  PARTIES

1.1   Joe Hunsinger is a an individual citizen of Texas and a resident of this District.

1.2   Defendant Affordable Auto Protection, LLC. (Affordable) is a Florida corporation with its principal place of business in the State of Florida with a principle address of 1300 N Congress Rd., West Palm Beach Florida 33409.  Palm Beach County.

1.3   Affordable was created by Gus Renny.

1.4   Defendant can be served by their registered agent Gus Renny at 1300 N Congress Rd., West Palm Beach Florida 33409.

1.5   Sing for Services, LLC. dba MEPCO (Mepco) is an Illinois corporation with its principal place of business 205 North Michigan Ave, #2200, Chicago, Illinois 60601.

1..6   Mepco can be served through their registered agent Illinois Corporation Service, 801 Adlai Stevenson Dr., Springfield, Illinois 62703.

## 2.0  JURISDICTION AND VENUE

2.1    This court has personal specific jurisdiction pursuant to 28 USC Section 1331 and 47 USC Section 227.

2.2    Supplemental jurisdiction for Plaintiffs state law claims arise under 28 USC Section 1391(b)(2).

2.3    This Court has personal specific jurisdiction over Defendant because defendant made calls to Plaintiff in this District.

## 3.0  PRELIMINARY STATEMENT

3.1    This is an action for damages brought by an individual consumer for violations of the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive and nuisance telemarketing practices.

3.2    Senator Hollings, the TCPA's sponsor, described these call as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of be; they hound us until we want to rip the telephone out of the wall."

3.3    According to findings by the FCC, the agency congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.

3.4    The national DNC registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  Plaintiff requested a copy of Defendants DNC Policy. xxx

3.5    The TCPA regulations define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

3.6    Telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services.

3.7    Neither the TCPA nor its implementing regulations require an explicit mention of a good, product, or service – where the implication of an improper purpose is "clear from the context."

3.8    In other words, "offers that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.

3.9    If a call is not deemed telemarketing, a Defendant must nevertheless demonstrate that it obtained the Plaintiffs prior express consent.

3.10  The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages.

3.11  "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."

3.12  Plaintiff has been harmed by Defendants' acts because his privacy has been violated.  Plaintiff was subject to annoying and harassing telephone calls (texts) that constitute a nuisance.

3.13  Telemarketers must obey the prohibitions in the TCPA.

3.14 Telemarketing is defined as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or charitable contribution

by use of one or more telephones and which involves more than one interstate telephone call.

3.15  Plaintiff establishes injury in fact, if he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

3.16  Plaintiff has the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA.

3.17  Plaintiffs "express consent" is not an element of Plaintiffs prima facie case, but is an affirmative defense for which the Defendant bears the burden of proof.

3.18  One single unsolicited marketing text or call is all it takes for a Plaintiff to have standing and bring suit against a violator of the TCPA.

3.19  The TCPA does not bar all business-related text messaging, but instead, focuses, in part, on cellular calls and text messages that are for the purpose of soliciting new or additional business.

3.20  Defendants actions are a pattern and practice over time.

3.21  Defendants, in its alleged violation, was aware of the conduct and allowed it to continue.

3.22  The impersonal and generic nature of Defendants text message(s), demonstrate that Defendant utilized an ATDS in transmitting the message.

3.23  The text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.

3.24  Plaintiff has alleged facts sufficient to infer text messages were sent using ATDS – use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS.

3.25  Defendant used a "long code" to transmit a text to the Plaintiff.  A long code is a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized.  Defendant can copy and past and send hundreds of characters out with a few clicks.

3.26  Long codes work as follows:   Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to an from the mobile phone networks SMS centers which are responsible for relaying those messages to the intended mobile phone.  This allows for the transmission of a large number of SMS messages to and from a long code.

3.27  Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the call/text messages at issue in this case.  The systems utilized by Defendant have the capacity of store telephone numbers  and to dial such number from a list.

3.28  Defendants unsolicited calls/text message(s) caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendants text messages also inconvenienced Plaintiff and caused disruption of his daily life.

3.29  Unwanted "Robocalls" are the number one complaint in America today. Americans received 45 billion robocalls just last year in 2020.

3.30  Plaintiff estimates he has received tens of thousands of unauthorized and unwanted text messages in his lifetime from telemarketers.  Some have been from repeat violators and some have been from single call/text violators.  The Bureau of Labor Statistics tells us there are 134,800 telemarketers in the USA.  If

this information is correct American consumers could quite possibly receive 369.31 calls per day and we have to tell the telemarketers is to place us on their do not call list and we won't hear from them in another 12 months, and then process begins all over again?  Plaintiff does not want to have his phone ring or text 369.31 times a day from telemarketers.  Plaintiff does not even want one telemarketer to call him.  There is a reason they say we as a nation may disagree on many issues, but when it comes to unwanted telemarketing (Robocalls/texts) we all agree that we do not like them.

3.31  The contempt from Senator Hollings was he even wanted to do away with all telemarketers, period.  Plaintiffs pleading as mentioned above are clear and give an insight on where Plaintiff set of mind.  How he wants to left alone and unbothered by telemarketing calls/texts.

3.32  The do not call provisions of the TCPA cover any plan, program or campaign to sell goods or services through interstate phone calls. This includes calls by telemarketers who solicit consumers, often on behalf of third party sellers.

3.33  The TCPA has a "safe harbor" for inadvertent mistakes.  If a telemarketer can show that, as part of its routine business practice, it meets all the requirements of the safe harbor, it will not be subject to civil penalties or sanctions for mistakenly calling a consumer who has asked for no more calls, or for calling a person on the registry of the DNC list.

3.34 Plaintiffs complaint seeks money damages and injunctive relief from Defendants illegal conduct.

3.35 This private cause of action is a straight forward provision designed to achieve a straightforward result.  Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights.  Violations of the law are clear, as is the remedy.

3.36  The TCPA was enacted to prevent companies like Defendant from invading Plaintiffs' privacy as explained in paragraph 3.27 and 3.28.

3.37  Defendant(s) uses telemarketing to obtain new customers.

3.38  If Defendant(s) want to avoid a TCPA lawsuit, all they have to do is not break the laws of the TCPA.

## 4.0  VICARIOUS LIABILITY

4.1  At all times relevant the the events giving rise to this lawsuit, Defendant acted through its agents and is therefore liable for such actions pursuant of vicarious liability principles.

4.2  Whenever it is stated herein that Defendant engaged in any act or omission, the statement includes the acts or omissions by Defendant, its agents, its employees, its representatives and others with actual or apparent authority to act on behalf of and bind the Defendant.

## 5.0  QUESTIONS OF LAW

5.1  There are well defined and nearly identical questions of law and fact that affect all parties.  Such common questions of law and fact include, but are not limited to, the folllowing:

5.2  Whether Defendant(s) placed such telephone calls to the Plaintiff;

5.3  Whether Defendant(s) TCPA violations and conduct was knowing and/or willful:

5.4    Whether Defendant(s) can meet their burden of showing that they
       clearly and unmistakably obtained "prior express consent" to make
       such  calls/texts to the Plaintiff;

5.5    Whether Defendant(s) are liable for damages to the Plaintiff, as well as
       the amount to of such damages;

5.6    Whether Defendant(s) identified themselves to the Plaintiff or if
       their agents identified the entity on whose behalf the call/text was
       being made;

5.7    Whether Defendant(s) sent Plaintiff their DNC policy when it was
       requested;

5.8    Whether Defendant(s) uses telemarketing to obtain new customers;

5.9    Whether Defendant(s) have a written DNC policy;

5.10   Whether Defendant(s) written DNC policy was shared with anyone
       "on demand.";

5.11   Whether Defendant(s) can prove they trained their employees about
       the telemarketing rules and laws set in place;

5.12   Whether Defendant(s) have maintained a list of persons that they may
       not contact;

5.13  Whether Defendant(s) have a process in place to prevent phone calls to either numbers on the National Do Not Call List or numbers on the telemarketers internal do not call list;

5.14  Whether Defendant(s) have a process in place to monitor calls to prevent violations of the do not call list;

5.15  Whether Defendant(s) have maintained an errant list of all call that violate the do not call regulations;

5.16  Whether Defendant(s) can prove they used TCPA compliant vendors;

5.17  Whether Plaintiff opted out of receiving calls/texts from Defendant.

5.18  Whether Defendant(s) honored Plaintiffs opt out/stop request.

5.19  Whether Defendant(s) had reason to know, or should have known that its conduct would violate the statute.

5.20  Whether Plaintiff is entitled to injunctive relief;

5.21  Whether Defendant(s) should be enjoined from engaging in such mentioned conduct in the future;

5.22  Common questions in this case have common answers.

## 6.0  FACTUAL ALLEGATIONS
## AGAINST RESORT VACATIONS, INC.

6.1    On Thursday March 23, 2021 at 12:36 PM Plaintiff received a phone call from 903-345-7946 to his cellular phone number ending in 8146.  Plaintiff said hello, hearing a beeping sound, after a couple of seconds someone came on the line.  It was a telemarketer claiming selling automobile warranty insurance.   The telemarketers voice sounded far off, like it was coming from a far away place and then the call was transferred and the voice reception was a lot better.  So was the English.

6.2    Plaintiff, wanting to investigate his claim against the telemarketer, followed the telemarketers cues about the warranty packages he was marketing and answered his questions.

6.3    Plaintiff, wanting to ascertain the true identity of the telemarketer, provided his credit card number to Defendant Affordable.  Immediately after providing his credit card number to Defendant Affordable he was charged $195 to his American Express.

6.4    Plaintiff gave his email and mailing address address to Defendant Affordable and was told he would be receiving an email shortly and an insurance policy in the mail.

6.5    As of today April 12, 2021 Plaintiff has not received an email or anything in the mail from Defendant Affordable.

6.6    About a week later Plaintiff received paperwork about his Affordable Auto Protection automobile warranty insurance from Mepco.

6.7    Upon Plaintiffs information and believe, Mepco is an auto warranty service provider who relies on Affordable to solicit and generate prospective customers and enter into contracts on their behalf with those prospective customers.

6.8    Mepco's letter tells Plaintiff he has authorized them to automatically debit his credit card to make payments on the "contract".

6.9    Plaintiff never authorized Affordable or Mepco to automatically debit his credit card.

6.10  Gus Renny the founder of Affordable has been sued several times over the years for violating the TCPA under other LLC's.   And now Mepco associates with Gus Renny and relies on his to bring them business from telemarketing campaigns with his new LLC. despite his previous civil history.

6.11  Mepco and Gus Renny have been sued in the past for the same TCPA violations they schemed up together.

6.12   Come on' man.

6.13  Plaintiff is informed and believes and therefore alleges that calls that Defendant placed to him were made using an automatic telephone dialing system.  Plaintiff's belief is substantiated by the fact that the call began with a pause, of several seconds of Plaintiff saying "hello" several times, did a representative come on line with the Plaintiff.

6.13  Plaintiff searched Defendant on Pacer [and also paid their fees to search and look at pleadings] found numerous legal filings against the Gus Renny from his other LLC's and Mepco and their subsidiaries or affiliates for previous TCPA violations.

6.14  Plaintiff called the Defendant telemarketer Affordable at 903-345-7946 and it is a non working number.

6.15  Affordable never identified themselves to the Plaintiff over the telephone at the time of the call in question in this Complaint.

6.16  The acts and or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently about absent bona fied error, lawful right, legal defense, legal justification, or legal excuse.

6.17  Part of Plaintiffs discovery will will be finding out if Defendant has a company wide pattern or practice of engaging in the alleged illegal practices at issue in my case.  Plaintiff is proffering that a number of similar incidents have occurred around the country to other everyday people even though Defendant has been sued for violating the TCPA in the past.

6.19  The call placed by the Defendant was not necessitated by an emergency.

6.20  Defendants calls were transmitted to Plaintiffs cellular telephone, and within the time frame relevant to this action.

6.21  Defendant and/or their agents failed to properly identify themselves as required by the TCPA.

6.22  Plaintiff is not a customer of Defendant and has not provided defendant with his personal information or telephone number, or sought out solicitation from the Defendant or their agents.

6.23  It is Defendants burden to prove they has "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system."

6.24  At no time did Plaintiff provide prior express written consent, or even prior permission, for the Defendant or their agents to call the Plaintiff.

6.25 Plaintiff does not have and has never had an established business relationship with the Defendant.

6.26 The call received by the Plaintiff from the Defendant or their agent was for the purpose of encouraging the purchase of rental of, or investment in, property, goods, or services. The call therefor qualifies as telemarketing.

6.27 Plaintiff is the subscriber of phone number ending in 8146 and is financially responsible for phone service to said number.

6.28 Plaintiff's phone number ending in 8146 is primarily used for personal, family, and household use.

6.29 Upon information and belief, Defendants calls harmed the Plaintiff by causing the the very harm that Congress sought prevent – that is the "nuisance and invasion of privacy" and a Plaintiff suffered a concrete and particularized harm.

6.30 Upon information and belief, Defendants calls harmed Plaintiff by intruding upon Plaintiffs seclusion when he was on the phone call with the junkyard, lost time attending to unwanted and unauthorized calls, decreased phone battery life, need for more frequent re-charging of the battery, annoyance, and frustration.

6.31 As a result of Defendant illegal conduct, Plaintiff is entitled to $500 in damages for each such violation of the TCPA. This is for each and every violation, whether Defendant committee multiple violations with a single phone call.

6.32 The calls telemarketing calls for auto warranty have now stopped. Defendants have called Plaintiff multiple times in their telemarketing campaign.

# 7.0 STANDING

7.01  Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state: (a) a valid injury in fact; (b) which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision.

7.02  Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution.

7.03  For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. In Plaintiffs case, Defendant transmitted a call to Plaintiff's cellular telephone, using an ATDS. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff. All three of these injuries are concrete and de facto.

7.04  For an injury to be "particularized" means that the injury must "affect the Plaintiff in a personal and individual way." In Plaintiffs case, Defendant invaded Plaintiffs privacy and peace by calling his cellular telephone, and did this with the use of an ATDS.  Furthermore, Plaintiff was distracted and annoyed by having to take time answering the phone call from Defendants agent and jump through hoops to get their identity.  All of these injuries are particularized and specific to Plaintiff.

7.05  Plaintiffs case passes The " Traceable to the Conduct of Defendant" Prong.

7.06  The second prong to establish standing at the pleadings phase is that Plaintiff must allege facts to show that its injuries are traceable to the conduct of Defendant. The above call was directly and explicitly linked to Defendant.  The number from which the call was sent belongs to Defendant. This call  is the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that her injuries are traceable to the conduct of Defendant.

7.07  Plaintiffs case passes the " Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong,

7.08  The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion In the present case, Plaintiff's Conclusion include a request for damages for each call transmitted by Defendant, as authorized by statute in  47 USC. Section 227. The statutory damages were set by Congress and specifically  redress the financial damages suffered by Plaintiff.

7.09  Plaintiff, under his 14 Amendment rights, has right to bring this action to be heard in front of a jury.

7.10  Because all standing requirements of Article III of the US Constitution have been met, Plaintiff has standing to sue Defendant on the stated claims.

## COUNT 1

8.01  Plaintiff re-alleges and incorporates the above paragraphs.

8.02  Defendant violated 47 USC Section 227(b)(1)(A)(iii) by placing (non emergency) solicitation call to the Plaintiff.

8.03  Defendants each must pay Plaintiff $500 for each call placed to Plaintiff.

## COUNT 2

9.01  Plaintiff re-alleges and incorporates the above paragraphs.

9.02  Defendants transmitted **one** solicitation call to Plaintiffs cellular phone number, which was registered on the Do Not Call registry, violating 47 CFR Section 64.1200(c).

9.03  Defendants each must pay Plaintiff $500 for each call placed to Plaintiff.

## COUNT 3

10.01 Plaintiff re-alleges and incorporates the above paragraphs.

10.02 Defendants knew or should have know that Plaintiff had not given <u>express consent</u> to receive its calls violating USC Section 227(b)(3)(C).

10.03 Each Defendant must pay Plaintiff $500.

## COUNT 4

11.01 Plaintiff re-alleges and incorporates the above paragraphs.

11.02 Defendant transmitted a call to the Plaintiff, despite the fact that Plaintiffs phone number <u>is listed on the DNC list</u>, a violation of USC Section 227(c).

11.03 Each Defendant must pay Plaintiff $500.

## COUNT 5

12.01 Plaintiff re-alleges and incorporates the above paragraphs.

12.02 Defendant transmitted <u>more than one call</u> to the Plaintiff, a violation of USC Section 227(c)(5)(B).

12.03 Defendant must pay Plaintiff $500 for each call placed to the Plaintiff.

## COUNT 6

13.01 Plaintiff re-alleges and incorporates the above paragraphs.

13.02 Defendant <u>spoofed their caller id.</u>  The phone numbers on displayed on Plaintiffs caller id were long codes.  Plaintiff cannot call Defendants long code and speak to someone.  A violation of 47 CFR Section 64.1601(4)(e).

13.03 Defendant failed to provide a <u>call back number</u> in the initial call transmitted to Plaintiff.  A violation of 47 CFR Section 64.1200(b)(2).

13.04 Defendant must pay Plaintiff $500.

## COUNT 7

14.01 Plaintiff re-alleges and incorporates the above paragraphs.

14.02 Defendant made calls to Plaintiffs phone ending in 7677 intentionally or knowingly and the calls were not accidental.

14.03 Pursuant to TBCC Section 305.053, Plaintiff sues here for monetary damages.

140.4 Pursuant USC Section 227(c)(5) and 47 CFR Section 64.1200(a)(2), treble the $500 statutory damages to be recoverable by Plaintiff against the Defendant to $1500 for each transmitted call Defendant placed and for violating the the DNC request.

14.05 Defendant must pay Plaintiff $1500 for each violation and call transmitted to Plaintiff.

## COUNT 8

15.01 Plaintiff re-alleges and incorporates the above paragraphs.

15.02 Pursuant to 47 USC Section 227(b)(3)(A) and TBCC Section 305.053, the court following the trial of this action should issue an order permanently enjoining Defendant and its agents from engaging in any further conduct with respect to Plaintiff which violates the rules and regulations of 47 USC Section 227.

## COUNT 9

16.01 Plaintiff re-alleges and incorporates the above paragraphs.

16.02 Defendant intentionally intruded on Plaintiffs solitude, seclusion, and private affairs by transmitting unwanted telemarketing calls to his cellular phone. Defendants intrusion would be highly offensive to a reasonable person.

16.03 The repeated autodialed calls to Plaintiffs cellular phone have caused him emotional harm and distress, frustration, aggravation, wasted time, a nuisance and other losses.

16.04 Plaintiff seeks to recover actual damages, including his damages for mental anguish, to be proven at trial.  Mental anguish is one of the torts for which Plaintiff can recover mental-anguish damages without proving physical injury.

## TRIAL BY JURY

17.01 Plaintiff demands a trial by jury under the 7th Amendment of the US Constitution.

## CONCLUSION

Plaintiff has read Dondi Properties Corp. v. Commerce Savs. & Loan Ass'n which pretty much establishes the conduct for attorneys and references abusive litigation tactics from attorneys conduct.  Plaintiff believes if Defendant would read Dondi and instruct their attorney to send copies of the filings and emails between the Plaintiff and Defendants attorney, this would inform the Defendant on what the real world is like with respect to attorneys and their legal actions and it might keep Defendants attorney from "poking a stick at Plaintiffs ribs" just to upset him and try to prolong the hours he will be charging his client.

If Affordable or Mepco deduct any money from Plaintiffs credit card they will be in violation of 15 USC 1693e, which Plaintiff amend his Complaint and will also

include more civil action under 1693m for these violations.  Do not charge my credit card again.  Do not sell or give out the information you have about me. Whatever information you have on my keep lock it up and throw away the key or face more civil litigation.

Plaintiff requests everything he has asked for in his Complaint and other relief as the Court deems necessary.

Joe Hunsinger – Pro se
7216 CF Hawn Frwy.
Dallas, Texas 75217
214-682-7677
joe75217@gmail.com

 **Gmail**                                        **Joe Hunsinger <casa75217@gmail.com>**

---

## National Do Not Call Registry - Your Registration Is Confirmed

---

**Verify@donotcall.gov** <Verify@donotcall.gov>                                    Mon, Apr 12, 2021 at 8:06 AM
To: casa75217@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 8146 on September 11, 2014. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

## 2021  FLORIDA LIMITED LIABILITY COMPANY ANNUAL REPORT

DOCUMENT# L20000232535

**Entity Name:** AFFORDABLE AUTO PROTECTION, LLC

**Current Principal  Place of Business:**

1300 OLD CONGRESS RD
WEST PALM BEACH, FL  33409

**Current Mailing Address:**

1300 OLD CONGRESS RD
WEST PALM BEACH,  FL  33409 US

**FEI Number:** 86-2888397

**Certificate of Status Desired:** No

**Name and Address of Current Registered Agent:**

RENNY, GUS
1300 OLD CONGRESS RD
WEST PALM BEACH, FL  33409  US

*The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.*

SIGNATURE: _____

   Electronic Signature of Registered Agent                                                                                    Date

**Authorized Person(s) Detail :**

| Title | MGR |
|---|---|
| Name | RENNY, GUS |
| Address | 1300 OLD CONGRESS RD |
| City-State-Zip: | WEST PALM BEACH  FL  33409 |

*I hereby certify that the information indicated on this report or supplemental report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 605, Florida Statutes; and that my name appears above, or on an attachment with all other like empowered.*

SIGNATURE: GUSTAV RENNY                                              MGR                            04/06/2021

   Electronic Signature of Signing Authorized Person(s) Detail                                                     Date



# MEPCO

Providing Billing Services for Your Automotive Protection Plan
10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603

## CONFIRMATION OF PREAUTHORIZED ACH/CC

**BILLING ACCOUNT NUMBER**     20210369335975

### ACCOUNT AND CONTRACT INFORMATION

| | |
|---|---|
| Contact Mepco at: | (800)397-6767 |
| Billing Account Number: | 20210369335975 |
| Access your account online at: | WWW.MEPCO.COM |
| User Name: | 20210369335975 |

| | |
|---|---|
| AAP | (888)678-0697 |
| Contract Number: | DAE1010388 |

| | |
|---|---|
| DIMENSION-PELICAN | (800)457-7703 |
| Contract Number: | DAE1010388 |

2673 1 MB 0.450      12      Return Service Requested
Joseph D Hunsinger
7216 C F Hawn Fwy
Dallas, TX 75217-4849

Mepco is not responsible for the marketing, sale, design, administration of claims, or payment of claims under this vehicle service contract.

Dear Valued Customer,

**IMPORTANT NOTICE:**
This letter is to confirm that you have arranged to make recurring payments to Mepco under your vehicle service contract. Pursuant to your Authorization Agreement for Recurring Direct Payments, Mepco will charge/debit your designated credit card or debit card/bank account in the amount of the monthly payments and fees you owe under your vehicle service contact and on or after the date indicated in your debit authorization, in each case subject to additional terms and conditions of your Authorization Agreement for Recurring Direct Payments.

Payment Method Used:   Credit Card
Truncated Account Number:   1002

**WHAT THIS MEANS:**
Each month your payment will be processed automatically by Mepco using the above account information.

**HOW TO UPDATE AUTOMATIC RECURRING PAYMENTS:**
Your recurring debit authorization will remain in effect until revoked by you in accordance with the terms below:

You may update your automatic recurring payment at any time by submitting an email to request to update recurring payments on our website at www.mepco.com, by mailing a written statement expressly revoking this authorization to Mepco, 10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603, or by calling Mepco's Customer Service department at (800) 397-6767.

*** Please note, Mepco will require a reasonable time, but in no event less than 10 calendar days following the receipt of this authorization or any change to or revocation of this authorization, to act on the authorization, change or revocation.

**If you have not requested this change to automatic recurring payments, please contact our office immediately.**

If you have any questions regarding this notice please contact our Customer Service department at (800) 397-6767 Monday through Friday from 8:00 am to 5:00 pm CST.

Sincerely,

Mepco

# MEPCO

Providing Billing Services for Your Automotive Protection Plan
10 South LaSalle Street - Suite 2310 Chicago, Illinois 60603

# WELCOME LETTER

| **ACCOUNT INFORMATION** | **20210369335975** |
|---|---|
| Billing Account Number: | 20210369335975 |
| Seller Contract Number: | DAE1010388 |

002673    2673  1 MB 0.450    12    Return Service Requested

Joseph D Hunsinger
7216 C F Hawn Fwy
Dallas, TX 75217-4849

Dear Valued Customer,

## Congratulations on your purchase of a vehicle service contract from   AAP

We appreciate your business! Mepco is the company that will process your monthly payments for this contract. Mepco is not responsible for the marketing, sale, design, administration of claims, or payment of claims under this vehicle service contract.

Please carefully review the information on the next page and confirm your monthly payment method and the terms of your vehicle service contract. If you have any questions or if the terms are different than you agreed to, please call our office immediately.

You may access your account online at **www.mepco.com** to make payments and review important account details such as remaining balance, contract details, and more.

| | |
|---|---|
| **User Name:** | 20210369335975 |
| **Password\*:** | HU29J976426 |
| \*You will be prompted to change your password upon your first time logging in. | |

Thank you for your business.  We look forward to servicing your account.

Mepco

Rev. 06/2017

# FACTS

**WHAT DOES MEPCO**

**DO WITH YOUR PERSONAL INFORMATION?**

| | |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>■ Social Security number and Credit Card and/or Checking Account Information<br>■ Account Balance and Account Transaction and Transaction History<br>■ Payment History and Other Personally Identifiable Information<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Mepco chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Mepco share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | No | We Don't Share |
| **For joint marketing with other financial companies** | No | We Don't Share |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | No | We Don't Share |
| **For nonaffiliates to market to you** | No | We Don't Share |

| | |
|---|---|
| **Questions?** | Call 800-397-6767   or go to www.Mepco.com |



# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOE HUNSINGER

## DEFENDANTS

AFFORDABLE AUTO PROTECTION, LLC. etal

**(b)** County of Residence of First Listed Plaintiff   DALLAS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   PALM BEACH
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED
APR 1 2 2021
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO-SE

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

*PERSONAL INJURY*
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**

*Habeas Corpus:*
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

*Other:*
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [x] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC SECTION 1331 AND 47 USC SECTION 227

Brief description of cause:
VIOLATIONS OF THE TCPA

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
4-12-2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____